Nott, J.,
delivered tbe opinion of tbe court:
This is an action brought to recover $6,760 14, being a balance of commissions alleged to have been due to Benjamin Tyson, deceased, as tbe agent of tbe Navy Department for tbe purchase of anthracite coal.
Tbe case has been pressed with great zeal, learning, and ability, and a recovery earnestly insisted upon. Tbe argument of tbe claimants’ counsel is, moreover, strongly sustained by a very able report from tbe Committee on Naval Affairs of tbe House of Bepresentatives, made in March, 1860. But a majority of tbe judges have come to an adverse conclusion, and think that tbe action cannot be maintained.
Tbe contract rebed upon rests in tbe following appointment:
“ Navy Department, May 22,1864.
“ Sir : You are hereby appointed tbe agent of tbe Navy Department for tbe purchase of anthracite coal for tbe use of tbe navy, from time to time, as specially ordered by the department and its bureaus.
“ Your duty will be to select mithracite coal, under the direction of the department and its bureaus, of tbe best quality, adapted to tlie purpose for which it is to be used, and to ship it to such points as may be indicated.
“ You will receive a commission of five per cent, on tbe aggregate amount of the cost of the coal, its transportation and freight, which commission is to cover all your expenses of selecting, purchasing, and shipping the coal.
“ Yery respectfully, your obedient servant,
"S. C. DOBBIN.
“ Benj. Tyson, Esq., '
“ Washington, D. 0."
Under this appointment Mr. Tyson received orders from.the department and its officers, which may be divided into three classes:
1st. Tbe first directed Mr. Tyson to ship or send coal to New York or Philadelphia, points to which it could be transported by rail, and for which no marine shipment was necessary. For these services Mr. Tyson received a commission on the cost of the coal and on its railroad transportation, andas to these there is no complaint.
*387 2d. The orders of the second class directed Mr. Tyson to ship or send coal to certain home stations, such as the Gosport navy yard, Boston, Charleston, &c. In rendering services under these orders, Mr. Tyson chartered the vessels and attended to the reshipment of the coal. For these services he received his commissions on the cost of the coal, on the transportation to the port of reshipment, and on the freight of the marine shipment to the port of ultimate destination. And as to these commissions there is also no dispute.
3d. The remaining orders were letters informing him that the department had taken up a vessel for the transportation of anthracite coal from New York or Philadelphia to Bio Janeiro, or some other South American or other foreign port, and that he would please to make arrangements for the purchase, that the vessels might not be delayed. Under these orders Mr. Tyson shipped the coal to New York or Philadelphia; attended to the delivery, and countersigned the bills of lading; but did not charter the vessels, which, on the contrary, was uniformly done by the department. For these services Mr. Tyson received his commissions on the cost of the coal and on the transportation to New York or Philadelphia, but not on the freight to the foreign port. And it is to recover these commissions on this foreign marine freight that this suit is brought.
The action rests on the words “ shipping” and "freight,” in the letter of appointment. It is contended that as Mr. Tyson was “ to ship” the coal, and was to receive a commission on the "freight” to cover all his expenses of “ shipping the coal,” therefore he should recover his commission on these foreign shipments, inasmuch as neither by common use nor by legal intendment is chartering the vessel to be taken as the shipment of the goods.
As great importance is necessarily attached to the words and phraseology of the appointment, it is well to look at the words and phraseology of the orders. The only uniformity which I can detect in any of them is, in those which involved on Mr. Tyson’s part a chartering of vessels. These invariably use the phrase "to ship.” "You will please ship to the navy yard at Boston one hundred and twenty-five tons of coal.” “ You will please purchase and ship to the United States navy yard, Gos-port, Yirginia, seven hundred tons of the best anthracite coal,” &c., &c. With regard to the orders which involved mere *388 railroad transportation, tbe phraseology varies. “You will please purchase and ship to tbe New York yard.” “You will jilease have delivered at tbe navy yard New York,” &c., &c. And with regard to tbe orders iu tbe disputed class, there is a still greater diversity of form, except that they are uniform in never using tbe phrase “to ship.” In one letter tbe direction is: “ You will see to having tbe coal referred to provided for tbe ship so that there may be no delay.” In another: “ You will jilease make arrangements to send tbe coal to her at New York.” In a third: “ You will take measures to have it delivered at tbe earliest moment, as tbe ship is now ready to take it in.”
From these letters it is apparent that tbe department and not Mr. Tyson advertised for these vessels, bad them examined by naval officers, chartered them, supervised their movements, notified Mr. Tyson of them times of sailing, and exercised all tbe care, labor, and responsibility which Mr. Tyson exercised over those other vessels for which he claimed, and the department allowed, a commission on the freight.
The construction which we give to this appointment, and to the orders of the department and the services of the agent, is this: The appointment is not a general contract assuring to the agent a commission on all the purchases which the government might make, but was limited to such as were “ specially ordered.” By a like restriction the agent had not the privilege of shipping the coal to all the points at which the government might require it, but “ to such povnis as may he indicated.” In the instances of marine shipment to the home ports of Boston and Gosport, the department indicated them as the points, and threw upon the agent the care, labor, and responsibility of selecting, procuring, and chartering vessels. For his services in transporting the coal to those vessels he received a commission on the transportation; and for the further service and responsibility of procuring the vessels and supervising their transportation of the coal to Boston or Gosport he received a further commission on their freight. But in the instances of the shipment to all parts of the world, the only points which the department indicated to the agent were the home ports of New York and Philadelphia. So far as his duty was concerned he was simply to ship it to each ship already provided by the government. It neither varied his service nor his responsibility *389 wbetber tbe vessel was bound to one foreign port or another, nor wbetber sbe was a merchantman, chartered, or a man-of-war owned by tbe government. All that be bad to do was done in shipping tbe coal to her and delivering it on board. Nothing beyond this was “ specially ordered and tbe responsibility of foreign shipments was clearly reserved from tbe agent.
Tbe error in tbe theory of this case arises from treating tbe official agent of tbe government as a consignor who ships goods at tbe risk, by delivering them to tbe carrier, of tbe consignee. On tbe contrary, tbe official care and custody of tbe purchasing agent was not ended by his dehvering tbe coal to a carrier of bis own cbosing, but continued until it came to tbe official custody of some other officer or agent of tbe government. In some cases these officers or agents were those at tbe various navy yards to which tbe coal was shipped j in others they were those on tbe ships of war which received it; and in tbe cases now under consideration they were tbe captains of tbe chartered vessels which tbe department employed.
It is also to be noted that tbe words in tbe appointment, “ ship it to such points as map he indicated,” do not enlarge tbe compensation but limit tbe service. Tbe compensation followed tbe service. Where tbe service was limited to points indicated, (which, as we have seen, were tbe government vessels in New York or Philadelphia,) tbe compensation thereby was likewise limited. It was not tbe intent of tbe appointment to give tbe agent compensation for services which he did not render.
Tbe judgment of tbe court is that tbe petition be dismissed.
Casey, Ch. J., and Peck, J., dissented.